IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **BRANDI OWENS**, an individual, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.:_____ ) |
| **GENERAL MOTORS, LLC;** **TAKATA CORPORATION;** **TK HOLDINGS, INC.;** and **TAKATA AG**, | ) ) *Jury Trial Demanded* ) ) ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Brandi Owens, individually by and through her undersigned counsel of record and shows unto the Court the following:

## PARTIES

1. The Plaintiff, Brandi Owens, is an individual over the age of nineteen (19) and is a resident and citizen of Forsyth County, Georgia.

2. Defendant General Motors, LLC ("GM") is a Delaware Corporation, with its principal place of business in Michigan, and does business throughout the United States, including the State of Georgia, for profit. At the time of the occurrence made the basis of this action and for sometime prior thereto, Defendant

GM was qualified to do business and solicited for sale and sold its motor vehicles, including the 2013 Chevrolet Cruze VIN# 1G1PC5SB4D7168523 (the "subject vehicle") involved in the incident made the basis of this Complaint, in this state and judicial district.  Defendant GM has an agent for service of process upon which service can be had, to wit: CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 125, Marietta, Georgia, 30060.

3. Defendant Takata Corporation is a foreign corporation with its principal place of business in Tokyo, Japan and does business throughout the United States, including the State of Georgia, for profit. At the time of the occurrence made the basis of this action and for sometime prior thereto, Takata Corporation was in the business of designing, manufacturing, testing, marketing, distributing and/or selling airbags including the driver's airbag (the "subject airbag") in the 2013 Chevrolet Cruze involved in the incident made the basis of this Complaint, in this state and judicial district. Defendant Takata Corporation can be served with process through the Hague Convention Treaty, to wit: Takata Corporation, ARK Hills South Tower, 4-5 Roppongi 1-Chome, Minato-ku, Tokyo, 106-8488, Japan.

4. Defendant TK Holdings, Inc. is a Delaware Corporation, with its principal place of business in Michigan, and does business throughout the United States, including the State of Georgia, for profit. At the time of the occurrence

made the basis of this action and for sometime prior thereto, Defendant TK Holdings, Inc. was qualified to do business and solicited for sale and sold, designed, manufactured, tested, marketed, and/or distributed airbags, including the subject airbag in the 2013 Chevrolet Cruze, involved in the incident made the basis of this Complaint, in this state and judicial district.  Defendant TK Holdings, Inc. has an agent for service of process upon which service can be had, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

  5. Defendant Takata AG is a foreign corporation with its principal place of business in Germany and does business throughout the United States, including the State of Georgia, for profit. At the time of the occurrence made the basis of this action and for sometime prior thereto, Takata AG was in the business of designing, manufacturing, testing, marketing, distributing and/or selling airbags, including the subject airbag in the 2013 Chevrolet Cruze involved in the incident made the basis of this Complaint, in this state and judicial district.  Defendant Takata AG can be served with process through the Hague Convention Treaty, to wit: Takata AG, Bahnweg 1, 63743 Aschaffenburg, Germany.

  6. Defendants Takata Corporation, TK Holdings, Inc. and Takata AG will hereinafter collectively be referred to as "Takata".

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over the claims in this complaint because the amount in controversy exceeds the sum of $75,000.00 and is between citizens of different states. 28 U.S.C. §1332(a)(1).

8. Venue is proper in this Court pursuant to LR 3.1, N.D. Ga. and 28 U.S.C. §1391.

## STATEMENT OF THE FACTS

9. On or about October 12, 2013, the Plaintiff, Brandi Owens, was driving the subject vehicle in heavy, stop-and-go traffic on GA 400 in Forsyth County, Georgia when, at a very low speed, the Plaintiff's car bumped the rear end of the car in front of her. At that time, the subject driver's airbag deployed, exploding with such force that it detached from the steering wheel and struck the Plaintiff in the face, causing her left eye to rupture. Due to the severe, permanent and disfiguring injuries the Plaintiff suffered in this incident, she is now permanently and completely blind in her left eye.

10. The subject vehicle was designed, developed, manufactured, tested, marketed, distributed and sold by GM. Additionally, the subject driver's airbag that was incorporated into the design of the subject vehicle, was designed, developed, manufactured, marketed, distributed and sold by GM and Takata. Prior to the aforesaid time and place, Defendants GM and Takata co-developed the driver's airbag of the subject vehicle, which allegedly utilized new, flexible

venting technology. At the time of the occurrence made the basis of this lawsuit, the subject vehicle and driver's airbag were in substantially the same condition as when they were designed, manufactured and sold by the Defendants.

11.    At all material times, the Plaintiff exercised due care and was properly using and operating the subject vehicle for the purpose and in the manner for which it was designed and sold.  The said vehicle was not reasonably safe when being so used in a foreseeable manner but, to the contrary, was defective and unreasonably dangerous when being so used.  GM and Takata knew, or in the exercise of reasonable care should have known, that the subject vehicle and the driver's airbag were defective and unreasonably dangerous to the human body when being so used in a foreseeable manner.

12.    As a direct and proximate result of the wrongful conduct of the Defendants, Brandi Owens (a) has sustained serious, severe, permanent, devastating, disabling, and disfiguring injuries, including the loss of her sight in her left eye; (b)has incurred substantial medical bills in an effort to cure her injuries in the past and will continue to do so in the future; (c) has suffered great physical pain in the past and will continue to do so in the future; (d) has suffered great mental anguish, annoyance, and embarrassment in the past and will continue to do so in the future; (e) has lost wages, benefits, and other income in the past and will continue to do so in the future; (f) has lost earning capacity for the future; (g)

has lost quality of life in the past and will continue to do so in the future; and (h) has suffered other damages.

## COUNT ONE
## STRICT LIABILITY AGAINST GM

13. Plaintiff adopts and realleges paragraphs 1-12 as previously set forth in this Complaint as if fully set out herein.

14. Defendant GM is the manufacturer of the subject vehicle, which is defective and unreasonably dangerous in its design and manufacture as marketed. GM is liable to the Plaintiff on the basis of strict liability because it designed, manufactured, advertised, marketed, tested, inspected, furnished, sold and distributed the subject vehicle by placing it into the stream of commerce when it was neither merchantable nor reasonably suited for the use for which it was intended and was otherwise defective and unreasonably dangerous.  At the time of the incident made the basis of Plaintiff's Complaint, the subject vehicle was in substantially the same condition as when designed, manufactured, furnished, sold and/or distributed, and the defective nature of the subject vehicle was the proximate cause of the injuries and damages sustained by the Plaintiff.

15. The said 2013 Chevrolet Cruze and its component parts were in a defective and unreasonably dangerous condition at the time of the aforesaid occurrence in that:

(a) The 2013 Cruze's driver's airbag sensors and/or restraints control module were defectively and/or inadequately designed, tested, manufactured, assembled and installed, as they triggered deployment in an obvious non-deploy event.

(b) The 2013 Cruze's driver's airbag inflators were defectively and/or inadequately designed, tested, manufactured, assembled and installed as they were overpowered and exploded during this non-deploy event.

(c) The 2013 Cruze's driver's airbag and its component parts were defectively and/or inadequately designed, tested, manufactured, assembled and installed because the airbag was not properly tethered, allowing the airbag to detach in a deployment event.

(d) The 2013 Cruze's driver's airbag and its component parts were defectively and/or inadequately designed, tested, manufactured, assembled and installed because it was not properly vented, which prohibited the airbag from adequately deflating under foreseeable impacts.

(e) The 2013 Cruze was not reasonably crashworthy.

(f) The 2013 Cruze's driver's airbag and its component parts were defective due to the Defendant's failure to test or adequately test the airbag and its parts to ensure they were reasonably safe and suitable for their intended purpose and use and to ensure they would provide adequate occupant protection under foreseeable low speed impacts.

(g) The 2013 Cruze's driver's airbag and its component parts were defective due to inadequate or absent warnings and/or proper notice to alert users regarding the hazardous conditions, as herein described, involving their use and operation.

16. The unreasonably dangerous nature of the 2013 Cruze and its component parts as herein described created a high probability that the vehicle, when involved in foreseeable low speed impacts, would result in severe and

7

permanent personal injuries. GM knew or should have known of the risks associated with the use and operation of the Cruze prior to production and marketing of the subject vehicle, and in a conscious disregard of the consequences, willfully, wantonly, and recklessly manufactured and sold the subject vehicle. The aforesaid defects in the subject vehicle were not known to the Plaintiff and were not discoverable through reasonable inspection.

17. The subject vehicle was equipped with a driver's airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject airbag exploding from the steering wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

18. The unreasonably dangerous and defective condition of the subject vehicle, specifically the driver's airbag, was the proximate cause of the severe and permanent injuries sustained by the Plaintiff.

## COUNT TWO
## NEGLIGENCE AGAINST GM

19. The Plaintiff adopts and realleges paragraphs 1-18 as previously set forth in this Complaint as if fully set out herein.

20. Defendant GM was negligent in the following respects in the design, manufacture, testing, distribution, sale, advertising, and/or warning regarding the subject vehicle:

   (a) failure to design, test, manufacture, assemble and install the driver's airbag sensors and restraints control module so as to prevent deployment of the airbag in an obvious no-deploy event

   (b) failure to design, test, manufacture, assemble and install the driver's airbag inflators so as not to cause them to be overpowered and explode during this no-deploy event.

   (c) failure to design, test, manufacture, assemble and install the driver's airbag so that it would be properly tethered and prevent detachment from the steering wheel and column under foreseeable impact conditions.

   (d) failure to design, test, manufacture, assemble and install the driver's airbag so that it was properly vented, and would adequately deflate under foreseeable impacts.

   (e) failure to ensure the subject vehicle was reasonably crashworthy.

   (f) failure to adequately test the subject vehicle's driver's airbag; and/or

   (g) failure to provide reasonable and adequate warnings to users – of the subject vehicle about its unreasonably dangerous and defective condition regarding its driver's airbag.

21. At the time GM designed, developed, manufactured, engineered, tested, marketed, inspected, distributed and/or sold the subject vehicle, it had a

duty to exercise reasonable care in order to provide a safe product and to manufacture, design, engineer, test, inspect, market, distribute and sell the product so as not to subject occupants of the vehicle to an unreasonable risk of injury, harm or death.

22. GM breached its duties, and its negligent conduct was a substantial contributing factor and proximate cause of the injuries and damages suffered by the Plaintiff.

23. The subject vehicle was equipped with a driver's airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject airbag exploding from the steering wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

24. As a direct and proximate result of GM's negligence, the Plaintiff suffered severe, permanent and disabling injuries, including blindness in her left eye.

## COUNT THREE
## PUNITIVE DAMAGES AGAINST GM

25. The Plaintiff adopts and realleges paragraphs 1-24 as previously set forth in this Complaint as if fully set out herein.

26. At the time GM designed, developed, engineered, manufactured, assembled, tested or failed to test, inspected or failed to inspect, marketed, furnished, sold, and/or distributed the 2013 Cruze involved in the incident made the basis of Plaintiff's complaint, it knew the subject vehicle was not reasonably safe when being so used in a foreseeable manner.

27. GM's actions and conduct in the design, development, manufacture, engineering, testing, marketing, inspection, distributing and/or selling the subject vehicle, were willful, wanton, malicious and/or reckless, and evidenced an entire want of care indicative of a conscious indifference to the consequences to the members of the general public, and the Plaintiff in particular, who would reasonably be expected to be affected by such actions and conduct of the Defendant.

28. The subject vehicle was equipped with a driver's airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject

airbag exploding from the steering wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

29. As a result of the above, GM is liable to the Plaintiff for punitive damages in an amount to be determined by the jury at the trial of this case to punish and penalize such conduct and deter such similar future conduct.

## COUNT FOUR
## STRICT LIABILITY AGAINST TAKATA

30. The Plaintiff adopts and realleges paragraphs 1-29 as previously set forth in this Complaint as if fully set out herein.

31. Defendant Takata is the manufacturer of the subject airbag, which is defective and unreasonably dangerous in its design and manufacture as marketed. Takata is liable to the Plaintiff of the basis of strict liability because it designed, manufactured, advertised, marketed, tested, inspected, furnished, sold and distributed the subject airbag by placing it into the stream of commerce when it was neither merchantable nor reasonably suited for the use for which it was intended and was otherwise defective and unreasonably dangerous. At the time of the incident made the basis of Plaintiff's Complaint, the subject airbag was in substantially the same condition as when designed, manufactured, furnished, sold and/or distributed, and the defective nature of the subject airbag was a proximate cause of the injuries sustained by the Plaintiff.

32. The subject airbag and its component parts were in a defective and unreasonably dangerous condition at the time of the aforesaid occurrence in that:

   (a) The subject airbag sensors and/or restraints control module were defectively and/or inadequately designed, tested, manufactured, assembled and installed, as they triggered deployment in an obvious no-deploy event.

   (b) The subject airbag's inflators were defectively and/or inadequately designed, tested, manufactured, assembled and installed as they were overpowered and exploded during this no-deploy event.

   (c) The subject airbag and its component parts were defectively and/or inadequately designed, tested, manufactured, assembled and installed because the airbag was not properly tethered, allowing the airbag to detach in a deployment event.

   (d) The subject airbag and its component parts were defectively and/or inadequately designed, tested, manufactured, assembled and installed because it was not properly vented, which prohibited the airbag from adequately deflating under foreseeable impacts.

   (e) The subject airbag and its component parts were defective due to the Defendant's failure to test or adequately test the airbag and its parts to ensure they were reasonably safe and suitable for their intended purpose and use and to ensure they would provide adequate occupant protection under foreseeable low speed impacts.

   (f) The subject airbag and its component parts were defective due to inadequate or absent warnings and/or proper notice to alert users regarding the hazardous conditions, as herein described, involving their use and operation.

33. The unreasonably dangerous nature of the subject Takata airbag and its component parts as herein described created a high probability that the airbag,

when involved in foreseeable low speed impacts, would result in severe and permanent personal injuries. Takata knew or should have known of the risks associated with the use and operation of the subject airbag prior to production and marketing of the subject airbag, and in conscious disregard of the consequences, willfully, wantonly and recklessly manufactured and sold the subject airbag. The aforesaid defects in the subject airbag were not known to the Plaintiff and were not discoverable through reasonable inspection.

34. The subject airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject airbag exploding from the steering wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

35. The unreasonably dangerous and defective condition of the subject airbag was the proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff.

## COUNT FOUR
## NEGLIGENCE AGAINST TAKATA

36. The Plaintiff adopts and realleges paragraphs 1-35 as previously set forth in this Complaint as if fully set out herein.

37. Defendant Takata was negligent in the following respects in the design, manufacture, distribution, sale, advertising and or warnings regarding the subject airbag:

(a) failure to design, test, manufacture, assemble and install the driver's airbag sensors and restraints control module so as to prevent deployment of the airbag in an obvious no-deploy event.

(b) failure to design, test, manufacture, assemble and install the driver's airbag inflators so as not to cause them to be overpowered and explode during this no-deploy event.

(c) failure to design, test, manufacture, assemble and install the driver's airbag so that it would be properly tethered and prevent detachment from the steering wheel and column under foreseeable impact conditions.

(d) failure to design, test, manufacture, assemble and install the driver's airbag so that it was properly vented, and would adequately deflate under foreseeable impacts.

(e) failure to ensure the subject vehicle was reasonably crashworthy.

(f) failure to adequately test the subject vehicle's driver's airbag; and/or

(g) failure to provide reasonable and adequate warnings to users – of the subject vehicle about its unreasonably dangerous and defective condition regarding its driver's airbag.

38. At the time Takata designed, developed, manufactured, engineered, tested, marketed, inspected, distributed and/or sold the subject airbag, it had a duty

to exercise reasonably care in order to provide a safe product and to design, manufacture, engineer, test, inspect, market, distribute and sell the product so as not to subject occupants to an unreasonable risk of injury, harm or death.

39. Takata breached its duties, and its negligent conduct was a substantial contributing factor and proximate cause of the severe, permanent and disabling injuries sustained by the Plaintiff.

40. The subject airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject airbag exploding from the steering wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

41. As a direct and proximate result of Takata's negligence, the Plaintiff suffered severe, permanent and disabling injuries, including blindness in her left eye.

## COUNT SIX
## PUNITIVE DAMAGES AGAINST TAKATA

42. The Plaintiff adopts and realleges paragraphs 1-41 as previously set forth in this Complaint as if fully set out herein.

43. At the time Takata designed, developed, engineered, manufactured, assembled, tested or failed to test, inspected or failed to inspect, marketed, furnished, sold and/or distributed the subject airbag involved in the incident made the basis of the Plaintiff's complaint, it knew the subject airbag was not reasonably safe when being so used in a foreseeable manner.

44. Takata's actions and conduct in the design, development, manufacture, engineering, testing, marketing, inspection, distributing and/or selling the subject airbag, were willful, wanton, malicious and/or reckless, and evidenced an entire want of care indicative of a conscious indifference to the consequences to the members of the general public, and the Plaintiff in particular, who would reasonably be expected to be affected by such actions and conduct of the Defendant.

45. The subject airbag that should not deploy under low speed impact conditions. Due to either a design or manufacturing defect, the subject airbag deployed during the low speed impact made the basis of this complaint when it should not have. When the subject airbag deployed, the combination of the inflators being overpowered and the airbag being improperly vented and tethered, combined and concurred, to result in the subject airbag exploding from the steering

wheel and detaching, striking Plaintiff in the face and proximately causing her horrific left eye rupture, resulting in blindness.

46. As the result of the above, Takata is liable to the Plaintiff for punitive damages in an amount to be determined by the jury at the trial of this case to punish and penalize such conduct and deter such similar future conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, BRANDI OWENS, prays and respectfully demands the following:

(a) That summons and service be perfected upon the Defendants requiring the Defendants to be and appear in this Court within the time required by law and to answer this Complaint;

(b) That Plaintiff, Brandi Owens, be awarded compensatory damages from the Defendants for her physical and emotional pain and suffering, pre-impact fright and loss of enjoyment of life in such amounts as may be shown by the evidence and determined by the jury in their enlightened conscience;

(c) That Plaintiff, Brandi Owens, be awarded special damages from the Defendants for her past, present and future medical expenses and past, present and future loss of income and

earnings in such an amount as ay be shown by the evidence and proven at trial;

(d) That the Plaintiff, Brandi Owens, be awarded punitive damages from the Defendants in such amounts as may be shown by the evidence and determined by the jury in their enlightened conscience;

(e) That the Defendants be charged with all Court costs attributable to this action and such other costs reasonably incurred in the prosecution and trial of this case; and

(f) That the Plaintiff be granted such other and further relief as this Court deems just and proper.

Respectfully submitted this the 28th day of April, 2014.

/s Yehuda Smolar
**Yehuda Smolar**
Georgia Bar No. 665150
**YES Law Group, LLC**
500 Bishop Street, Suite A-4
Atlanta, GA 30318
(404) 525-3900
Fax (404) 522-4932
Email: ysmolar@yeslawgroup.com

/s Thomas P. Willingham
**Thomas P. Willingham**
Georgia Bar No. 235049

Attorney for the Plaintiff
**LAW OFFICES OF THOMAS P. WILLINGHAM, P.C.**
3800 Colonnade Parkway, Suite 330
Birmingham, AL 35243
(205) 298-1011
Fax (205) 298-1012
Email: tom@tpwpc.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by a struck jury for all issues involved in this cause.

/s Thomas P. Willingham
Thomas P. Willingham
Georgia Bar No. 235049
Attorney for Plaintiff